IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

ATHLOS, LLC,

         *Plaintiff,*

v.

776 STARTING LINE INC.,

         *Defendant*.

Case No.
1:25-cv-04971-WMR

## 776 STARTING LINE INC.'S RESPONSE IN OPPOSITION TO PLAINTIFF'S EMERGENCY MOTION FOR TEMPORARY RESTRAINING ORDER

## **<u>TABLE OF CONTENTS</u>**

PRELIMINARY STATEMENT ................................................................1

BACKGROUND .............................................................................2

ARGUMENT ...............................................................................7

I.    PLAINTIFF IS UNLIKELY TO SUCCEED ON THE MERITS OF ITS
      TRADEMARK INFRINGEMENT CLAIM ...................................................8

      Factor 1: Strength of the Mark ...............................................8

      Factor 2: Similarity of the Marks ...........................................10

      Factor 3: Similarity of the Products and Services ...........................12

      Factor 4: Similarity of Retail Outlets and Customers ........................14

      Factor 5: Similarity of Advertising Media ...................................16

      Factor 6: Defendant's Intent ................................................17

      Factor 7: Actual Confusion ..................................................18

      Analysis of All Factors .....................................................20

II.   THERE IS NO IRREPARABLE HARM TO PLAINTIFF ..................................20

III.  THE BALANCE OF EQUITIES FAVORS 776..........................................23

IV.   AN INJUNCTION WOULD NOT BE IN THE PUBLIC INTEREST ........................25

V.    PLAINTIFF HAS NOT COMMITTED TO POST A BOND ..................................25

CONCLUSION ..............................................................................26

# TABLE OF AUTHORITIES

**Cases**                                                          **Page(s)**

*Ab v. Chenmed, LLC*,
    No. 22-cv-22654-KMM, 2022 U.S. Dist. LEXIS 220646 (Dec. 7,
    2022) ...................................................................................................18

*BeatStars, Inc. v. Space Ape Ltd.*,
    624 F. Supp. 3d 681 (W.D. Tex. 2022) ..........................................22

*CEI Grp. LLC v. C.E.I. Composite Materials, LLC*,
    No. 19-11611, 2021 U.S. Dist. LEXIS 27673 (E.D. Mich. Feb. 12,
    2021) ...................................................................................................24

*CORD:USE Cord Blood Bank, Inc. v. CBR Sys.*,
    No. 11-cv-893-Orl, 2012 U.S. Dist. LEXIS 158394 (M.D. Fla.
    Sept. 26, 2012), *report and recommendation adopted*, 2012 U.S.
    Dist. LEXIS 158395 (M.D. Fla. Nov. 5, 2012) .................................21

*Eyebobs, LLC v. Snap, Inc.*,
    259 F. Supp. 3d 965 (D. Minn. 2017)...............................................10

*Fla. Int'l Univ. Bd. of Trs. v. Fla. Nat'l Univ., Inc.*,
    830 F.3d 1242 (11th Cir. 2016) ........................................................17

*Frehling Enters. v. Int'l Select Grp., Inc.*,
    192 F.3d 1330 (11th Cir. 1999) ........................................10, 12, 14, 18

*Grubhub Inc. v. Relish Labs LLC*,
    80 F.4th 835 (7th Cir. 2023), *cert. denied*, 144 S. Ct. 2630 (2024) ...................18

*Hard Candy, LLC v. Anastasia Beverly Hills, Inc.*,
    921 F.3d 1343 (11th Cir. 2019) ........................................................19

*Harlem Wizards Ent. Basketball, Inc. v. NBA Props., Inc.*,
    952 F. Supp. 1084 (D.N.J. 1997).......................................................13

*Healthbox Global Partners, LLC v. Under Armour, Inc.*,
   2016 U.S. Dist. LEXIS 93414 (D. Del. July 19, 2016) .......................................14

*Hi-Tech Pharms., Inc. v. Nutrition Res. Servs., Inc.*,
   717 F. Supp. 3d 1318 (N.D. Ga. 2024).........................................................15, 16

*Hypnotic Hats, Ltd. v. Wintermantel Enters., LLC*,
   335 F. Supp. 3d 566 (S.D.N.Y. 2018) .................................................................14

*John H. Harland Co. v. Clarke Checks, Inc.*,
   711 F.2d 966 (11th Cir. 1983) ............................................................................10

*Liangsword Ltd. v. P'ships*,
   No. 24-60618, 2024 U.S. Dist. LEXIS 139405 (S.D. Fla. Aug. 6,
   2024) .....................................................................................................................24

*Monster Energy Co. v. BeastUp LLC*,
   395 F. Supp. 3d 1334 (E.D. Cal. 2019) ..............................................................12

*Off Lease Only, Inc. v. Lakeland Motors, LLC*,
   No. 18-cv-1555-Orl, 2020 U.S. Dist. LEXIS 258632 (M.D. Fla.
   Feb. 10, 2020) ......................................................................................................11

*Playmakers, LLC v. ESPN, Inc.*,
   297 F. Supp. 2d 1277 (W.D. Wash. 2003) .....................................................13, 15

*Ronin Factory, LLC v. Imp. Glob., LLC*,
   No. 24-24700-CIV, 2025 WL 887371 (S.D. Fla. Mar. 20, 2025)........................9

*Siegel v. LePore*,
   234 F.3d 1163 (11th Cir. 2000) .............................................................................7

*Tana v. Dantanna's*,
   611 F.3d 767 (11th Cir. 2010) .............................................................................16

*White v. Alcon Film Fund, LLC*,
   955 F. Supp. 2d 1381 (N.D. Ga. 2013)..................................................................9

*Wreal, LLC v. Amazon.com, Inc.*,
   38 F.4th 114 (11th Cir. 2022) .......................................................................passim

*Wreal, LLC v. Amazon.com, Inc.*,
   840 F.3d 1244 (11th Cir. 2016) ..............................................................8, 22, 23

**RULES**

Fed. R. Civ. P. 65(c)..................................................................................................25

## PRELIMINARY STATEMENT

On September 26, 2024—nearly one year ago—776 hosted a groundbreaking event: ATHLOS NYC 2024. A women's-only track event at Icahn Stadium in New York City watched by over *three million viewers*, it was a resounding success and a watershed moment in women's sports. The ATHLOS brand was prominently displayed and used throughout, including in promotions leading up to the event beginning in July 2024 and in national news coverage before, during, and after the fact. 776 has continued to use the brand in promoting the follow-up to that event, ATHLOS NYC 2025, which is a few weeks away. ATHLOS NYC 2025 has been advertised for over six months, numerous top-tier Olympic female track stars have partnered with the league and intend to participate, musical guests are booked, and sponsors have paid to promote their brands.

It is only now—more than a year *after* 776 began to use ATHLOS and despite this same event being held a year ago—that Plaintiff runs to Court claiming it will be irreparably harmed and seeking emergency relief. Yet, out of those millions of viewers who were exposed to 776's use of ATHLOS at last year's event, Plaintiff has not identified a single individual who confused 776's ATHLOS-branded track event with Plaintiff's ATHLOS-branded cycling apparel. Nor has it submitted

survey or other evidence showing the potential for confusion. Plaintiff has, in other words, demonstrated neither confusion *nor* reverse confusion. Plaintiff submits only an unsupported declaration from its CEO hypothesizing that there will be confusion and harm, without evidence of either. Plaintiff's failure to carry its heavy burden to show likelihood of confusion is reason enough to deny this motion. Plaintiff also disregards the marks' differences in commercial use and areas: Plaintiff sells uniforms, whereas 776 organizes events.

Plaintiff asks this Court to halt 776's promotion of ATHLOS NYC 2025, an important women's track event that would directly benefit female athletes—even though Plaintiff cannot prove *any* substantial likelihood of harm or irreparable injury from 776's use of the ATHLOS brand on a non-competing platform. Plaintiff's motion for emergency relief should be denied.

## **BACKGROUND**

776 aims to support the growth of women's sports by investing in and founding female athlete-centric initiatives. (*See* Declaration of Chris Vanzetta ("Vanzetta Decl."), ¶ 3.) Among these is ATHLOS, a women's-only track and field event series that is set to launch as a professional league in 2026. (*Id.* ¶ 4.) Founded in 2024 following the popularity of the track events around the Paris Olympics, and

interest in women's sports more generally, the ATHLOS event series aims to grow the audience for the sport and address the lack of lucrative professional opportunities and media exposure for female athletes in track and field.  (*Id.* ¶¶ 5-6.)

The inaugural ATHLOS meet was held nearly a year ago, on September 26, 2024, at New York City's Icahn Stadium.  (*Id.* ¶ 7.)  It combined six running events featuring well-known athletes, including Olympic medalists, with live musical performers and entertainment.  (*Id.* ¶¶ 9-10.)  ATHLOS NYC 2024 also offered the largest prize purse ever for a women's-only track meet and shared 10% of event revenue directly with participating athletes.  (*Id.* ¶ 12.)  The 2024 event, which was branded as ATHLOS NYC 2024, drew more than three million viewers through streaming on X, YouTube, ESPN+ and other outlets, in addition to the nearly 5,000 fans live in attendance.  (*Id.* ¶¶ 8, 13.)  It also received national media coverage before and after the event.  (*See* Declaration of Craig Whitney ("Whitney Decl."), Exs. 4-7.)

Building on the first event's popularity, on March 12, 2025, 776 officially announced the return of ATHLOS to Icahn Stadium on October 10, 2025, with the same talent and high-energy experience, and adding a pre-meet public showcase in Times Square ("ATHLOS NYC 2025").   (Vanzetta Decl. ¶¶ 15-17.)   776 has

promoted the event on its website, via email and social media, on national radio and television, through paid digital marketing (including with influencers and content creators), and more.  (*Id.* ¶¶ 22-23.)

Plaintiff does not organize track and field events.  It is primarily engaged in designing and selling custom cycling apparel, which it claims to market to athletes. (Dkt. No. 4, Plaintiff's Emergency Motion for Temporary Restraining Order ("TRO Mot."), at 2-3.)  Plaintiff owns a federal trademark registration (U.S. Reg. No. 5,926,920) covering a stylized version of the ATHLOS mark in Class 25—which covers clothing, headgear and footgear—specifically for "cycling caps; athletic tops and bottoms for runners, cyclists and triathlons; cycling shorts; gloves; socks" ("Plaintiff's Athlos Stylized Mark").  (*See* Dkt. No. 4-1, Declaration of Phillip Sporidis ("Sporidis Decl."), Ex. 1.)

Plaintiff also filed an application in April 2025 for the standard-character mark ATHLOS, again in Class 25, for "clothing, namely, athletic apparel consisting of caps, shirts, bottoms, gloves and socks" ("Plaintiff's Athlos Application," together with Plaintiff's Athlos Stylized Mark, "Plaintiff's Class 25 Athlos Mark") (U.S. Serial No. 99/130,463).  (*Id.* Ex. 2.)  Although it claims to have sponsored cycling events in the past, Plaintiff does not own any mark for *any* services, and particularly

not in Class 41 covering the type of services offered by 776's ATHLOS track event and league.  (*See id.* Exs. 1-2.)  Nor is there any evidence that Plaintiff has ever staged, produced, or broadcast its own live sporting events, or promoted any track-and-field competitions.

776 initially filed two federal trademark applications for its ATHLOS trademark.  776's primary application for ATHLOS, filed in Class 41 on May 28, 2024, covers "Athletic, entertainment, and sports event services in the nature of track and field of events" ("776 Class 41 Athlos Mark").  (Whitney Decl. ¶ 4.)  On December 11, 2024, the U.S. Patent and Trademark Office ("USPTO") issued a Non-Final Office Action for the application for the 776 Class 41 Athlos Mark, citing potential confusion with certain third-party trademarks.  (*Id.* ¶ 5.)  The USPTO did not cite Plaintiff's Class 25 Athlos Mark, of course, because Plaintiff does not own any registration or application covering these types of services.  (*Id.*)  776 filed a response to this Office Action on May 29, 2025, and is awaiting USPTO approval.  (*Id.* ¶ 6.)

Although 776 separately filed an application for the ATHLOS mark in Class 25 for apparel (U.S. Serial No. 98/638,002) (*Id.* ¶ 7), it allowed this application to lapse when the USPTO cited potential confusion with Plaintiff's Athlos Stylized

Mark in a separate Non-Final Office Action.  (Whitney Decl. ¶ 8.)  While 776 disagreed with this initial refusal, it decided instead to focus its registration efforts on its core sports events and entertainment business.  (Vanzetta Decl. ¶ 37.)

On March 6, 2025, over nine months after 776 filed its initial trademark application, and over five months after ATHLOS NYC 2024 took place, Plaintiff sent 776 a letter demanding that it cease use of the ATHLOS mark for any purpose. (Dkt. 1, Compl., Ex. B.)  776 responded promptly on March 14, 2025, in correspondence that identified its prior use of the mark at the ATHLOS NYC 2024 event and suggested that the parties enter into a coexistence agreement that would preclude 776 from expanding into cycling, and even offered to only use its ATHLOS mark on clothing in connection with another term or design element.  (*Id.*, Ex. C.)

In July 2025, 776's founder personally reached out to Plaintiff to seek an amicable resolution, but Plaintiff refused to discuss a co-existence agreement, demanding that 776 purchase Plaintiff's Class 25 Athlos Mark for an exorbitant fee. (Declaration of Alexis Ohanian ("Ohanian Decl."), ¶ 3.)  In response, in August 2025, 776 reasonably requested financial information regarding the value of Plaintiff's mark, but Plaintiff refused, again demanding payment without support or justification.  (Whitney Decl. ¶¶ 14-15.)  Throughout this time, ATHLOS NYC 2025

was widely publicized.   776 is also not selling ATHLOS-branded apparel at ATHLOS NYC 2025, as it informed Plaintiff.  (Ohanian Decl. ¶ 4.)

Notwithstanding that 776 had been publicly using the ATHLOS mark to promote its track events for well over a year, Plaintiff neither filed suit nor sought emergency relief until September 2, 2025, barely a month before ATHLOS NYC 2025.  By that point, 776 had spent hundreds of thousands of dollars promoting ATHLOS NYC 2025, enlisted seven major sponsors that will also incorporate 776's Class 41 Athlos Mark in their promotions, reserved a major venue, and booked talent in both the sports and music world—making a full-scale rebrand at this late hour exceedingly harmful and commercially impracticable.  (Vanzetta Decl. ¶¶ 25-28.) After months of inaction, Plaintiff now seeks emergency relief to upend this worthy event.

## ARGUMENT

By its motion, Plaintiff seeks an "extraordinary and drastic remedy" that is "not to be granted unless the movant clearly established the burden of persuasion." *Siegel v. LePore*, 234 F.3d 1163, 1176 (11th Cir. 2000).  Plaintiff fails to meet this high bar.  Plaintiff cannot demonstrate that any of the elements of confusion weigh in its favor, which alone warrants denial of its motion.  Nor can it show irreparable

harm—given that the same public event occurred a year ago without any discernible harm to Plaintiff—or that the other two factors favor it.  Plaintiff's overreaching request should be denied.

## I.    PLAINTIFF IS UNLIKELY TO SUCCEED ON THE MERITS OF ITS TRADEMARK INFRINGEMENT CLAIM

Plaintiff cannot succeed on its infringement claim, let alone demonstrate a "substantial" likelihood of success. *Wreal, LLC v. Amazon.com, Inc.*, 840 F.3d 1244, 1247 (11th Cir. 2016).  This case is one of "reverse confusion," where the senior user of a mark argues that the junior user will "saturate the public conscience with its own use of the mark, thereby weakening and diminishing the value of the senior user's mark." *Wreal, LLC v. Amazon.com, Inc.*, 38 F.4th 114, 128-29 (11th Cir. 2022). Because Plaintiff cannot make any plausible argument that the parties operate in the same marketplace or target the same customers, or point to any actual confusion, it cannot show that the factors weigh in its favor.

**Factor 1: Strength of the Mark**

Plaintiff's analysis of this factor focuses on the alleged conceptual strength of its marks (TRO Mot. at 10-13), but it has not offered a shred of evidence demonstrating its marks' commercial strength—a consistent shortcoming throughout.  It instead makes the conclusory statements that it is "the leader in

custom cycling kits for teams, clubs and racers" and has "earned considerable goodwill in the sporting industry." (Sporidis Decl. ¶¶ 6, 9.) Without substantiation, these statements are insufficient to establish the strength of Plaintiff's mark. *See Ronin Factory, LLC v. Imp. Glob., LLC*, No. 24-24700-CIV, 2025 WL 887371, at *3-4 (S.D. Fla. Mar. 20, 2025) (cleaned up) (finding plaintiff failed to establish strength of mark when only allegation was the "conclusory" statement that plaintiff is "one of the market leaders"); *see also White v. Alcon Film Fund, LLC*, 955 F. Supp. 2d 1381, 1383 (N.D. Ga. 2013) (denying preliminary injunction when plaintiff's only evidence to support likelihood of success was a "conclusory statement, bereft of any legal support").

In any case, Plaintiff's argument is the wrong one. The Eleventh Circuit has recognized that in reverse-confusion cases, "the conceptual strength of the plaintiff's mark is necessarily less important to the analysis. . . . Accordingly, when assessing the distinctiveness of the mark in a reverse-confusion case, the district court should consider both the conceptual strength of the plaintiff's mark and the relative commercial strength of the defendant's mark." *Wreal, LLC*, 38 F.4th at 129. Here, the commercial strength of 776's Class 41 Athlos Mark is not significantly greater than the commercial strength of Plaintiff's Class 25 Athlos Mark. While 776's lone

ATHLOS-branded event received positive recognition and viewership, it operates in a narrow market that has not yet "saturate(d) the public conscience with its own use of the mark." *Id.; see Eyebobs, LLC v. Snap, Inc.*, 259 F. Supp. 3d 965, 974-75 (D. Minn. 2017) (denying preliminary injunction where plaintiff presented no evidence that its mark had been overwhelmed by defendant's mark, and only speculated that it would someday be overwhelmed).

Plaintiff's argument also ignores the impact of the many other "Athlos"-type marks that diminish the strength of Plaintiff's mark. Plaintiff's papers identify at least seven identical or nearly-identical marks (*see* Compl. Ex. C, at 2-5), which decrease the likelihood of confusion. *See John H. Harland Co. v. Clarke Checks, Inc.*, 711 F.2d 966, 974 (11th Cir. 1983) ("The greater the number of identical or more or less similar trade-marks already in use . . . the less is the likelihood of confusion"). This factor weighs against Plaintiff.

**Factor 2: Similarity of the Marks**

In analyzing the similarity of two marks, "the court compares the marks and considers the overall impressions that the marks create, including the sound, appearance, and manner in which they are used." *Frehling Enters. v. Int'l Select Grp., Inc.*, 192 F.3d 1330, 1337 (11th Cir. 1999). While Plaintiff's Class 25 Athlos

Mark and 776's Class 41 Athlos Mark include the same word, they are used differently, particularly in connection with the ATHLOS NYC 2025 event that is the focus of this motion.  Plaintiff's only registered mark, the Athlos Stylized Mark, features lowercase black text and a blue winner's wreath in place of the "o".  This is a different manner of use from 776's Class 41 Athlos Mark, which is consistently displayed in a different all-caps font and includes no blue wreath. (Vanzetta Decl. ¶ 30.)



These dissimilarities—coupled with the dissimilarities in offerings, customer bases and other factors, identified below—reduce the weight of this factor, as such differences can mitigate confusion even when core words used are the same.  For example, in *Off Lease Only, Inc. v. Lakeland Motors, LLC*, No. 18-cv-1555-Orl, 2020 U.S. Dist. LEXIS 258632, at *16-19 (M.D. Fla. Feb. 10, 2020), two used car dealerships used the same phrase to advertise on billboards: DON'T PAY MORE. Because they appeared on dissimilar billboards, with differences in "color, size, and placement . . . and the many other differences based on the context of the phrase," the court found that the factor weighed against a finding of likelihood of confusion.

Similarly, in *Monster Energy Co. v. BeastUp LLC*, 395 F. Supp. 3d 1334, 1355-56 (E.D. Cal. 2019), the court found that two marks, although registered as word marks—BEASTUP and UNLEASH THE BEAST!—were dissimilar in part because the parties used them with different fonts, cases, and styles. This factor therefore weighs in 776's favor.

**Factor 3: Similarity of the Products and Services**

In assessing this factor, it is important that 776 (i) chose not to pursue registration of the ATHLOS mark in Class 25 for apparel, (ii) is not currently offering any ATHLOS-branded apparel for sale, and (iii) is not selling any such apparel at ATHLOS NYC 2025. (Vanzetta Decl. ¶¶ 29,37.) 776 is only pursuing registration in Class 41 and is only using the mark in connection with its athletic event and entertainment services. (*Id.* ¶¶ 33-34, 37.)

The relevant question, therefore, is whether the public would attribute Plaintiff's goods (high-end custom cycling apparel) and 776's services (a women's professional track and field meet) to a single source. *See Frehling*, 192 F.3d at 1338 (similarity of products and services factor "requires a determination as to whether the products are the kind that the public attributes to a single source..."). The answer is almost certainly no. Under Plaintiff's reasoning, the respective goods and services

offered under Plaintiff's Class 25 Athlos Mark and 776's Class 41 Athlos Mark would be confusingly similar to *any* athletic good or service. But "athletic apparel" and "athletic events" are extremely broad categories, and no reasonable consumer would assume two brands operating in distinct branches of athletics are related to each other without further investigation.

Indeed, courts have held that consumers can readily differentiate between distinct offerings within the same overall branch of goods or services, including the world of athletics. *See, e.g.*, *Playmakers, LLC v. ESPN, Inc.*, 297 F. Supp. 2d 1277, 1282 (W.D. Wash. 2003) (finding "fact that" plaintiff's sports agency service for professional athletes, including football players, and defendant ESPN's television series about football players "both relate to sports in general is too remote to raise an inference of confusion"); *Harlem Wizards Ent. Basketball, Inc. v. NBA Props., Inc.*, 952 F. Supp. 1084, 1095 (D.N.J. 1997) (consumers could differentiate between a basketball show and an NBA professional basketball team; "[a]ny similarity between the two teams is superficial and the result of creating over-inclusive categories that are irrelevant to the likelihood of confusion"). Consumers can do the same here.

Plaintiff makes no suggestion that it might "bridge the gap" to producing women-only track and field events, or that consumers would perceive it as likely to do so. *See Hypnotic Hats, Ltd. v. Wintermantel Enters., LLC*, 335 F. Supp. 3d 566, 590 (S.D.N.Y. 2018) (finding plaintiff, who sold off-the-shelf socks in retail stores, was unlikely to "bridge the gap" into defendant's market, which was customized socks for coaches). Consumers are unlikely to believe that 776 would "bridge the gap" into offering custom apparel targeted at cyclists. *See Wreal*, 38 F.4th at 132. 776 does not sell uniforms or athletic apparel for *any* sport. (Vanzetta Decl. ¶ 32.) Any apparel it sells—no longer bearing the ATHLOS mark—are casual wear, such as t-shirts and baseball caps, for fans of the event. (*Id.* ¶ 32.) These are distinct categories of apparel. *See Healthbox Global Partners, LLC v. Under Armour, Inc.*, 2016 U.S. Dist. LEXIS 93414, *28-29 (D. Del. July 19, 2016) (larger junior user unlikely to expand into senior user's market despite both operating in health and fitness industries). This factor again weighs in 776's favor.

**Factor 4: Similarity of Retail Outlets and Customers**

There is also little "degree of overlap" between "the parties' outlets and customer bases" for their respective products. *See Frehling*, 192 F.3d at 1339 (requiring at lease "some degree of overlap" in markets). Plaintiff sells cycling

uniforms through its proprietary website, www.athlosports.com. 776 organizes live track and field events, for which it sells tickets on an unrelated proprietary website, www.athlos.com. (Vanzetta Decl. ¶ 20.) And Plaintiff's customers will encounter the marks primarily via the apparel they purchase, while 776's customers will do so through an ATHLOS NYC event.

Plaintiff's claimed overlapping customer base—"athletes or individuals interested in an active lifestyle"—is overbroad and incorrect. While Plaintiff markets its custom kits to athletes, specifically cyclists, 776 markets its events to fans of track, who may not be athletes at all. (*Id.* ¶ 19.) These are wholly distinct groups. *See PlayMakers, LLC*, 297 F. Supp. 2d at 1282 (injunctive relief denied where parties used identical marks used to identify sports agent services (plaintiff) and a television series about football players (defendant), as "the relevant consumers of plaintiff's services are professional *athletes*, while the relevant consumers of defendant's TV series is primarily football *fans*").

Plaintiff defends its overbroad characterization of the companies' customer bases by pointing to *Hi-Tech Pharmaceuticals, Inc. v. Nutrition Resource Services, Inc.*, 717 F. Supp. 3d 1318 (N.D. Ga. 2024). In *Hi-Tech*, two companies were found to have overlapping customer bases—"consumers interested in an active lifestyle"—

because both of their products (powdered pre-workout drink mixes) *targeted* exercisers generally, including "weightlifters, bodybuilders, cyclists, and other athletes." *Id.* at 1328. Again, here, Plaintiff's customers are engaging in exercise, but 776's are not. This factor weighs in 776's favor.

**Factor 5: Similarity of Advertising Media**

Plaintiff also fails to show that the parties advertise in similar media. That Plaintiff and 776 each promote themselves on distinct websites and social media accounts is no different than every other consumer-oriented company, and actually cuts against confusion. *See Tana v. Dantanna's*, 611 F.3d 767, 778 (11th Cir. 2010) ("[T]he only similarity in the advertising channels used by the two parties is their maintenance of websites on the World Wide Web. This similarity would dispel rather than cause confusion, however, because the websites are separate and distinct, suggesting two completely unrelated business entities.").

Similarly, the fact that both companies "sponsor[] athletic events to promote [their] business and brand" is not relevant in this context. Plaintiff has sponsored other companies' cycling competitions to promote its apparel business (TRO Mot. at 4), whereas 776's sponsorship of the ATHLOS events is not advertising for a

separate product—the event *is* 776's business. These are wholly different activities for purposes of assessing this factor.

Finally, Plaintiff's own papers show the difference in reach of the parties' marketing efforts, which is an important to the analysis. *See Fla. Int'l Univ. Bd. of Trs. v. Fla. Nat'l Univ., Inc.*, 830 F.3d 1242, 1263 (11th Cir. 2016) ("The key question in assessing similarity of advertising media is whether the parties' ads are likely to reach the same audience."). 776 advertises on a national scale, including "on the TODAY show [and] other large media outlets." (TRO Mot. at 6.) Plaintiff includes no such allegations about the scope or reach of its own efforts. It does not identify any nationwide advertising efforts. This factor weighs in favor of 776.

**Factor 6: Defendant's Intent**

Plaintiff claims that "the evidence of intent is strong" (*Id.* at 19), yet cites to no actual evidence. Once again, Plaintiff is heavy on rhetoric and light on support. Plaintiff argues that 776 was aware of its Athlos Stylized Mark from the USPTO citation on January 28, 2025—over six months *after* 776 began using the 776 Class 41 Athlos Mark and four months *after* the ATHLOS NYC 2024 event. 776's subsequent awareness of the Athlos Stylized Mark and use of the 776 Class 41 Athlos

Mark is not probative because 776 has always maintained a good faith belief that its use of the mark is non-infringing.  (*See* Compl. Ex. C.)

Indeed, what 776 knew on January 28, 2025 was that the Athlos Stylized Mark is registered in a separate class, targets different customers, and has clear visual dissimilarities from the manner in which Athlos uses the mark, and Plaintiff had not even filed its ATHLOS Application for the character mark at the time 776 filed its applications.  (Sporidis Decl. Exs. 2-4.)  776 thus had no need to reduce consumer awareness of Plaintiff's brand or drive them out of the market, and Plaintiff has offered no evidence that 776 attempted to do so.  Instead, 776 sought a coexistence agreement (Compl. Ex. C, at 6-7), which contradicts any suggestion of improper intent.  *See Grubhub Inc. v. Relish Labs LLC*, 80 F.4th 835, 857 (7th Cir. 2023) (characterizing plaintiff's offer to limit use of mark as an "attempt to strike a balance between the two parties' commercial interests" and finding no evidence of improper intent), *cert. denied*, 144 S. Ct. 2630 (2024).  This factor favors 776.

**Factor 7: Actual Confusion**

While not mandatory, "it is undisputed that evidence of actual confusion is the best evidence of a likelihood of confusion." *Frehling*, 192 F.3d at 1340.  "Instances of actual confusion include consumer inquiries regarding affiliation between the

parties or attempts to use the services offered by the other party." *Ab v. Chenmed, LLC*, No. 22-cv-22654-KMM, 2022 U.S. Dist. LEXIS 220646, at *26 (Dec. 7, 2022). Plaintiff has absolutely no evidence of actual confusion and presents only vague allegations that 776's use of the mark has caused "harm to Athlos' goodwill." (Sporidis Decl. ¶ 35.)

Plaintiff attempts to minimize the significance of no actual confusion by claiming that 776 has not used the 776 Athlos Class 41 Mark for very long. Yet, 776 organized and promoted ATHLOS NYC 2024 between July and September of *last year* and the event was streamed by millions and widely covered in the press. (Vanzetta Decl. ¶¶ 7-8, 13-14; *see also* Whitney Decl. Exs. 4-7.) Despite 776's very public use of 776's Class 41 Athlos Mark beginning over a year ago, Plaintiff provides *no evidence* that *any* consumer confusion occurred *at any point*. The fact that Plaintiff cannot muster even one instance of actual confusion is strong evidence that no confusion would occur by repeating that event next month. *See Hard Candy, LLC v. Anastasia Beverly Hills, Inc.*, 921 F.3d 1343, 1362 (11th Cir. 2019) (where "consumers have been exposed to two allegedly similar trademarks in the marketplace for an adequate period of time and no actual confusion is detected either by survey or in actual reported instances of confusion, that can be powerful

indication that the junior trademark does not cause a meaningful likelihood of confusion.").  Once again, this factor weighs in favor of 776.

**Analysis of All Factors**

Taking all factors together, Plaintiff's motion for extraordinary relief fails.  It cannot point to any evidence of overlap in goods or services, customers, or advertising with 776.  It cannot show that Plaintiff's Class 25 Athlos Mark will be used in a visually similar way to 776's Class 41 Athlos Mark at ATHLOS NYC 2025.  It cannot show that 776 acted with improper intent.  And it has *zero* evidence of consumer confusion, despite 776's public and highly visible use of the ATHLOS mark for the last year.  As the Eleventh Circuit has made clear, Plaintiff must carry its heavy burden to show the likelihood of confusion—it cannot be assumed.  *See Wreal, LLC*, 38 F.4th at 126.  Plaintiff has not done so.

## II.    THERE IS NO IRREPARABLE HARM TO PLAINTIFF

In addition to failing to carry its burden to show a likelihood of confusion, Plaintiff has not demonstrated irreparable harm.  As noted above, 776 held the same event a year ago (Vanzetta Decl. ¶ 7) and there was *no* impact on Plaintiff.  The event was widely promoted and viewed (*Id.* ¶¶ 13-14, 21), but Plaintiff cannot identify a single person who questioned its connection to the event.  Plaintiff appears to

recognize this issue, but downplays it, falsely claiming that 776 "promoted and operated its event in 2024 under the name '776 Invitational' last year." (TRO Mot. at 23.)  Not so.  While the event was initially announced under that name, it was rebranded as ATHLOS in July 2024, and the ATHLOS mark was prominently used in connection with the event.  (Vanzetta Decl. ¶¶ 8,11, Ex. 1.)



*A musical performance by Megan Thee Stallion at ATHLOS NYC 2024*

The ATHLOS NYC 2024 event was covered by major media outlets, such as *The New York Times*, CNN, *Sports Illustrated*, and *Runner's World*, all of which referred to it as "ATHLOS."  (Whitney Decl. Exs. 4-7.)  This period from July 2024 to the present, where the marks were used concurrently without any resulting damage to Plaintiff, weighs heavily in favor of denying the requested TRO relief. *See, e.g.*, *CORD:USE Cord Blood Bank, Inc. v. CBR Sys.*, No. 11-cv-893-Orl, 2012 U.S. Dist. LEXIS 158394, at *25-26 (M.D. Fla. Sept. 26, 2012) (preliminary

injunction denied where there was no evidence of actual confusion despite concurrent use, and therefore no substantial threat of irreparable harm), *report and recommendation adopted*, 2012 U.S. Dist. LEXIS 158395 (M.D. Fla. Nov. 5, 2012).

Plaintiff's months-long delay in seeking a restraining order until a few weeks before ATHLOS NYC 2025 also counsels against finding irreparable harm. *See Wreal*, 840 F.3d at 1248 (11th Cir. 2016) ("A delay in seeking a preliminary injunction of even only a few months—though not necessarily fatal—militates against a finding of irreparable harm."). 766 held its inaugural event under the ATHLOS brand one year ago. Even if Plaintiff was unaware of this event at the time—which, again, undermines any argument of harm—they were made aware of the 2024 event in March 2025 by 776's letter, and should easily have discovered the 2025 event given that it has been promoted nationally. *See also BeatStars, Inc. v. Space Ape Ltd.*, 624 F. Supp. 3d 681, 689 (W.D. Tex. 2022) (injunctive relief regularly denied "where a plaintiff, without sufficient explanation, delayed for five months or more in seeking injunctive relief") (cleaned up).

Plaintiff attempts to excuse its delay by claiming that 776 was somehow stringing it along in negotiations as it prepared for ATHLOS NYC 2025. That is nonsensical. 776 was not hiding its upcoming event—it was spending considerable

resources promoting it.  At the same time, 776 was not "stringing" Plaintiff along, but making good faith efforts to allow the brands to coexist.  776 attempted to reach a mutually acceptable agreement with Plaintiff, but Plaintiff made clear that it was only interested in an exorbitant payout that far exceeded the apparent value of its brand.  (Ohanian Decl. ¶ 3.)  Had Plaintiff believed it needed to protect its rights on an emergency basis, it could have done so months ago.  It only acted when it recognized that no windfall was forthcoming.

Given the lack of any prior harm and 776's apparent inattention to the upcoming event, Plaintiff's motion fails on this ground as well.  *See Wreal, LLC*, 840 F.3d at 1246 (finding no irreparable harm where plaintiff pursued its motion "with the urgency of someone out on a meandering evening stroll rather than someone in a race against time").

## III.    THE BALANCE OF EQUITIES FAVORS 776

The balance of equities weighs against enjoining 776 from using 776's Class 41 Athlos Mark with the upcoming event, which will take place in less than four weeks.  (Vanzetta Decl. ¶ 15.)  776 has invested substantial time, effort, and financial resources in developing and promoting the event under the ATHLOS brand, including extensive national advertising and coordinated campaigns across major

media platforms. (*Id.* ¶¶ 22-26.)  Hundreds of thousands of dollars have already been spent promoting the ATHLOS brand, and rebranding at this point would cost an estimated $500,000 to $1 million.  (*Id.* ¶¶ 26, 28.)  To prohibit use of the ATHLOS name at this late stage would not only erase months of promotional investment and disrupt numerous contractual commitments, but also risk substantial confusion for ticket holders, sponsors, and the broader public who were aware of ATHLOS NYC 2024.  *Liangsword Ltd. v. P'ships*, No. 24-60618, 2024 U.S. Dist. LEXIS 139405, at *19-20 (S.D. Fla. Aug. 6, 2024).

Moreover, Plaintiff is not trying to preserve the status quo, but to change it.  A TRO at this stage would force a complete rebrand of 776's services that would later have to be undone if the Court ultimately found in 776's favor.  This counsels against granting Plaintiff relief.  *CEI Grp. LLC v. C.E.I. Composite Materials, LLC*, No. 19-11611, 2021 U.S. Dist. LEXIS 27673, at *36-39 (E.D. Mich. Feb. 12, 2021) (noting that goodwill associated with a mark would be "irrevocably lost" if an injunction forced defendant to change its name, only to change back if it ultimately prevailed in the litigation).

In contrast, Plaintiff has not demonstrated—as it must—that it will suffer *any* harm by 776's continued use of the ATHLOS mark.  If past is prologue, it will remain

free to use the ATHLOS mark without risk of consumer confusion or any other disruption to its ordinary course of business. Equity thus favors permitting 776's use of the ATHLOS mark for the impending ATHLOS NYC 2025 event as planned.

## IV.    AN INJUNCTION WOULD NOT BE IN THE PUBLIC INTEREST

Plaintiff's contention that the public interest favors an injunction disregards the substantial countervailing benefits of allowing ATHLOS NYC 2025 to proceed under its established ATHLOS brand. The event is designed to spotlight women's athletics, offering a rare platform that elevates public visibility for female athletes, offers lucrative prizes and profit-sharing, and advances recognition of women's sports. (Vanzetta Decl. ¶¶ 6, 12.) Enjoining use of 776's Class 41 Athlos Mark now, and requiring a rebrand at the eleventh hour, would diminish the credibility of the event and allow old notions of women's sports as amateurish to fester. The public interest is therefore best served by allowing the event to proceed as planned.

## V.    Plaintiff Has Not Committed to Post a Bond

Finally, Plaintiff has not indicated any willingness to post the requisite bond. While this Court should deny Plaintiff's motion, should the Court disagree, Plaintiff should be required to post a bond of at least $1 million, the estimated cost of rebranding ATHLOS NYC 2025. (*Id.* ¶ 28.) *See* Fed. R. Civ. P. 65(c).

## **CONCLUSION**

For the foregoing reasons, 776 respectfully requests that the Court deny Plaintiff's Emergency Motion for Temporary Restraining Order.

Dated: September 15, 2025

By: */s/ E. Righton J. Lewis*

BUTLER SNOW LLP
E. Righton J. Lewis
Georgia Bar No. 215211
1170 Peachtree St., NE, Suite 1900
Atlanta, Georgia 30309
T: (678) 515-5000
F: (678) 515-5001
righton.lewis@butlersnow.com

PROSKAUER ROSE LLP
Craig B. Whitney*
Nicole Bergstrom*
Ashley K. Alger*
Nicole O. Swanson*
11 Times Square
New York, New York 10036
T: (212) 969-3000
F: (212) 969-2900
cwhitney@proskauer.com
nbergstrom@proskauer.com
aalger@proskauer.com
nswanson@proskauer.com
* *Pro hac vice* application forthcoming
*Attorneys for 776 Starting Line Inc.*

## **CERTIFICATE OF COMPLIANCE WITH TYPEFACE AND FORMATTING REQUIREMENTS**

Pursuant to Local Rule 7.1(D), I certify that this memorandum has been prepared using Times New Roman 14-point font and otherwise complies with the typeface and formatting requirements of Local Rule 7.1.

*/s/ E. Righton J. Lewis*
E. Righton J. Lewis

## **CERTIFICATE OF SERVICE**

I, E. Righton J. Lewis, hereby certify that a copy of 776 STARTING LINE

INC.'S RESPONSE IN OPPOSITION TO PLAINTIFF'S EMERGENCY

MOTION FOR TEMPORARY RESTRAINING ORDER  was served upon the

following counsel of record via electronic filing:

Zachary C. Eyster
GA Bar No.: 192335
Kennington R. Groff
GA Bar No.: 782901
Robin L. Gentry
GA Bar No.: 289899
Melanie K. Lane
GA Bar No.: 831941

BEKIARES ELIEZER, LLP
2870 Peachtree Rd. #512
Atlanta GA 30305
Telephone: 404.537.3686
kgroff@founderslegal.com
mlane@founderslegal.com
rgentry@founderslegal.com
zeyster@founderslegal.com

*Counsel for Plaintiff*

/s/ E. Righton J. Lewis
E. Righton J. Lewis
*Attorneys for Defendant 776 Starting
Line Inc.*

Dated:  September 15, 2025